# EXHIBIT C

# EDMONDS COLE
LAW FIRM

David W. Edmonds
David H. Cole
John R. Hargrave
Greg D. Givens
Michael Woodson
Clinton D. Whitworth
Sbella R. Benson*
Brandon P. Wilson
Nevin R. Kirkland
Christopher T. Combs
Poola M. Alvarez

*Also Admitted in Texas

One North Hudson, Suite 200
Oklahoma City, OK 73102
Phone: 405.272.0322
Fax: 405.235.4654
www.edmondscole.com

Of Counsel: Randy D. Witzke

Writer's Direct E-mail: dedmonds@edmondscole.com

October 15, 2008

David Russell
Rodolf & Todd
401 S. Boston Ave., Suite 2000
Tulsa, OK 74103-4014

Re: Luther Williams, et al. v. Seminole Health Center, et al.
No. S-CJ-2008-47; District Court of Seminole County, Oklahoma

Dear Mr. Russell:

This acknowledges receipt of yours (with attachments) dated September 17, 2008.

This letter constitutes my opinion regarding coverage for Seminole Medical Center under the policy issued by Darwin.

1. TSG, Inc. is identified under Item 1 of the Declarations (page 1 of 2) as the named Insured. The term "Insured Entity" is defined in page 4 of 19 of the Definitions as meaning the organizations listed in Schedule A. Endorsement No. 7, Schedule A - Insured Entity/Entities states:

   "* * * In consideration of the premium charged, it is hereby agreed that the term Insured Entity as defined in Section II, paragraph M, of the Policy, shall include TSG, Inc. and all subsidiaries and affiliates owned or controlled by TSG, Inc., including, but not limited to, the entities shown on and in accordance with the attached Schedule A."

   It is my understanding that Seminole Medical Center was owned or controlled by TSG, Inc. Therefore, I conclude that Seminole Medical Center is an insured under the policy at the time it was issued.

Page 2

2. Item 2 on the Declarations states that the Policy Period has an Inception Date of July 1, 2006 and an Expiration Date of July 1, 2007. Please note that the date of Williams' inpatient care was June 27, 2006 and therefore, we request that we be provided with prior policies, if they are in the possession of Darwin. If not, simply advise and we will see if we can locate the policy that was in effect on June 27, 2006.

3. Item 3 of the Declarations (page 1 of 2) specifies the limits for claims made for professional liability as well as occurrence based general liability.

4. The coverages afforded under the Policy are set forth in DRWN H5000 (6/2005) in 19 pages. Insuring Agreements are found on Page 1 of 19 for:

   A. Claims Made Professional Liability.

   B. Occurrence-Based General Liability.

   More specifically, at paragraph B Occurrence-Based General Liability, the Insuring Agreement states in pertinent parts:

   "The Insurer will pay on behalf of the Insured * * * Loss and Defense Expenses * * * which the Insured becomes legally obligated to pay as a result of a Claim alleging Bodily Injury, Property Damage * * * caused by an Occurrence; provided always that:

   1. such Bodily Injury, * * * occurs during the Policy Period; and

   2. notice of such Claim is given to the Insurer in accordance with Section IV.B.2 of this Policy."

   In connection with the boldface language contained in Coverage B - Occurrence-Based General Liability, Luther Williams alleges Bodily Injury in his Petition. Further, the term "Occurrence" is defined on Page 5 of 19 as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in injury neither expected nor intended by the Insured. We claim that the injuries sustained by Luther Williams come within that definition of the term "Occurrence." We also claim that notice of the claim was provided to you as attorney for Darwin by telephone call from the undersigned as well as correspondence from the undersigned. We further claim that the Bodily Injury has occurred during the Policy Period (7/1/06 through 7/1/07) in that by reason of the failure to advise Luther Williams of the contents of the

Page 3

x-ray report, Luther Willilams has sustained injuries during the entire Policy Period of 7/1/06 through 7/1/07. These injuries have continued to become progressively worse during the entire Policy Period.

5. On page 7 of 19 the Policy contains Exclusions Applicable to the Insuring Agreement 1.B., Occurrence-Based General Liability.

One of the Exclusions states that the Policy shall not apply to any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1. Injury to a **Patient**.

The word "Patient" is boldface, however, there is no definition of the term "Patient" contained in the Definition section of the Policy. At page 5 of 19, Paragraph U, the term "Patients" is defined as meaning any persons or human bodies admitted or registered to receive Medical Professional Services from an Insured, whether on an Inpatient, outpatient or emergency basis.

It is our position that firstly, the term "Patient" is not defined in the Policy even though it is boldface. Further, even if a Court were to include the term "Patient" within the term "Patients" and its Policy Definitions, still the evidence would show that at the time of the occurrence Luther Williams was not a "patient" in the hospital. He had been released prior to the time that the x-ray was read and the x-ray report delivered back to the hospital and in any event, any clerk, janitor, or medically trained person for that matter, could and should have delivered a copy of the report to Luther Williams who was no longer a patient. In fact, if any employee of the hospital had made Luther Williams aware of the report, there is no reason to anticipate that Luther Williams would have sought further care from anybody at the hospital. In fact, any halfway intelligent person who would read the report would know immediately that he needed to place himself in the hands of an oncologist for immediate testing and in the event the testing resulted in a positive diagnosis of cancer, then to seek the care of appropriate cancer treatment specialists (in this instance, he immediately followed up with treatment at M. D. Anderson in Houston).

I again request that you check to see if Darwin issued a prior policy (before the Inception Date of this Policy of 7/1/06 and, if so, please furnish me with a copy of that Policy. If Darwin did not issue a prior Policy but does know the identity of the prior insurer, kindly provide that information in order that I can obtain a copy of that Policy from that insurer.

Page 4

    I assume that you will pass this response on to Darwin for their consideration. Please advise Darwin that I will allow Darwin thirty (30) days from the date of this correspondence within which to determine whether they will provide a defense to Seminole Medical Center and/or any of the employees of Seminole Medical Center named as Defendants. After that, I will move for default against Seminole Medical Center.

                      Very truly yours,

                      EDMONDS COLE LAW FIRM

                      David W. Edmonds

DWE/tw